UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
DIVISION OF ORANGEBURG
CASE NO. 5:17-3251-JMC-SVH

| | |
|---|---|
| Sondra M. Murdaugh, : | |
| : | |
| Plaintiff, : | |
| : | |
| v.    : | COMPLAINT |
| : | (Jury Trial Requested) |
| Trinity Highway Products, LLC, : | |
| : | |
| Defendants. : | |
| _____: | |

Sondra M. Murdaugh, (hereinafter "the Plaintiff"), complaining of the conduct of Trinity Highway Products, LLC (hereinafter the "Defendant"), alleges the following actionable conduct:

## JURISDICTION AND VENUE

1. The Plaintiff is a resident and citizen of the County of Barnwell, State of South Carolina, United States of America.

2. The Defendant is a private business entity organized and existing under the laws of the United States, and with a factory and employees in Orangeburg, South Carolina.

3. The actionable conduct alleged herein occurred within the County of Orangeburg, State of South Carolina, and nearly all parties and witnesses named herein are residences and citizens of the State of South Carolina.

4. This action arises under the Constitution and laws of the United States and the Constitution and laws of the State of South Carolina.

5. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331.

6. Venue is proper, pursuant to 28 U.S.C. § 1391.

7. On or about September 5, 2017, the Plaintiff received a Notice of Right to Sue letter, dated August 29, 2017, attached hereto and incorporated herein, pursuant to the Equal Employment Opportunity Commission's (hereinafter "EEOC") investigation of sex discrimination and harassment and retaliation.

8. This Court has original jurisdiction to hear this action and personal jurisdiction over all parties named herein; and venue is proper in the District of South Carolina.

## FACTS

9. Plaintiff reiterates each and every allegation alleged herein as if the same were restated herein verbatim.

10. The Plaintiff is an African-American female.

11. Plaintiff's employment with the Defendant begun about June 2010 at its Orangeburg, South Carolina facility.

12. Plaintiff was employed as a Fabrication Welder.

13. Plaintiff was the sole female Fabrication Welder at Defendant's South Carolina facility.

14. At all times relevant to this action Terry McAlhany (hereinafter, "McAlhany"), a Caucasian male, was an employee and agent of Defendant at its South Carolina factory.

15. At all times relevant to this action Doug Larson (hereinafter "Larson"), a Caucasian male, was an employee and agent of Defendant at its South Carolina factory.

16. At all times relevant to this action McAlhany was Plaintiff's lead person.

17. At all times relevant to this action Larson was Plaintiff's shift supervisor.

18. Plaintiff was subjected to a persistent course of harassment and discrimination based upon her sex/gender from McAlhany and Larson.

19. On multiple occasions McAlhany and Laron directly and indirectly expressed to Plaintiff their disdain for women working in jobs traditionally held by men.

20. For illustration, on one occasion McAlhany said to Plaintiff, "Why did you sign the damn papers for a man's job if you could not do it."

21. Furthermore, Mcalhany said to Plaintiff, "If you are unable to perform the mother fucking job go home."

22. On multiple Larson has said to Plaintiff, "This is a man's world and this is a man's job. You had no idea it was going to be like this, did you," or made similar statements.

23. The statements and conduct expressed by McAlhany in paragraphs 20 and 21 and Larson in Paragraph 22 herein were a part of a pervasive pattern of conduct toward Plaintiff.

24. Moreover, McAlhany and Larson deliberately engaged in efforts to make Plaintiff's employment with Defendant difficult and unpleasant.

25. For illustration, on one occasion Larson yelled at Plaintiff to, "stop talking" as Plaintiff stood and talked with a co-worker, then pull closed a dividing curtain between Plaintiff's work area and the co-worker.

26. Similarly situated male employees were allow to socialize and communicate with without discouragement from McAlhany or Larson.

27. On another occasion Larson admonished Plaintiff for asking a co-worker to assist her in flipping a heavy steel, rail Plaintiff was welding, and forced Plaintiff to report to human resource regarding alleged complaints against Plaintiff pertaining to her work ethic and duties as a welder.  When Plaintiff arrived at human resources she was question regarding her ability to satisfy the lifting requirement of her welding job and forced to sign a paper verifying that she could perform the duties of her welding job.

28. A few weeks after the events descript in paragraph 27 herein, Plaintiff was sent back to human resources by McAlhany after Plaintiff requested assistance from a co-worker to flip a heavy steel rail she was work on.

29. The steel rail weighed 200 pounds or more, far exceeding lifting requirements identified in job description for the welding job she held.

30. Similarly situated male colleagues were permitted to use a forklift or other devises to assist in lifting the same or similar steel rails.

31. On or About January 26, 2016 Plaintiff was instructed to report to the office because of "missing welds on a part."  Plaintiff denied she had been performed the welding job that she was accused; however, Larson issued Plaintiff a "write-up" and threatened to terminate Plaintiff's employment the next time.

32. Plaintiff was informed by a co-worker that McAlhany instructed her co-workers to sabotage Plaintiff's work performance, and was circulating a petition around the plant against Plaintiff.  The worker also informed Plaintiff that McAlhany said to him, "I can't stand that bitch."

33. On January 26, 2016, Plaintiff was placed on a hole-puncher machine, which punched precise holes into steel plates. At some point during the shift Plaintiff notice that the hole-puncher machine was malfunctioning, and not punch holes to specification. Plaintiff reported the malfunction to McAlhany, who purportedly repaired the machine before Plaintiff resume work on the machine. Plaintiff discovered that the hole-puncher machine continued to malfunction, and reported the continued malfunction to McAlhany. Mcalhany informed Plaintiff that the malfunction was due to a bent rod on the machine, and moved Plaintiff to a different assignment for the remainder of the day. Before Plaintiff left the hole-puncher assignment she warned a co-worker that some of the plates produced by the hole-puncher machine were defective because machine was not punching holes to specification. However the co-worker disregarded Plaintiff's warning and used some of the defective plates in the production process.

34. Plaintiff was summoned by McAlhany to the location of a pile of defective steel plates she produced on the malfunctioning hole-punch machine the day before, and blamed Plaintiff for producing the defective plates. Thereafter, Larson summoned Plaintiff to his office, and requested that Plaintiff sign a write-up he had previously prepare before Plaintiff's arrival. Larson instructed Plaintiff that she was suspended for three days without pay.

35. When Plaintiff returned to work after the three day suspension period on February 1, 2016, Plaintiff was informed that her employment had been terminated.

36. Plaintiff had complained to Larson regarding McAlhany's harassing and discriminating conduct; and had complaint to management regarding Larson's harassing and discriminating conduct.

37. After Plaintiff's termination, she file a grievance with the Defendant in attempt to correct the termination of her employment; however, the termination of her employment was affirmed by the Defendant.

## FOR A FIRST CAUSE OF ACTION
(Sexual Discrimination and Harassment, Title VII of the Civil Right of 1964, as amended)

36. Plaintiff reiterates each and every allegation alleged herein as if the same were restated herein verbatim.

37. The Plaintiff is a female

38. Larson and McAlhany are males.

39. Larson and McAlhany are employees and agents for the Defendant.

40. Defendant, by and through the conduct of Larson and McAlhany, engaged in uninvited and unwanted sexually harassing and discriminating conduct targeting the Plaintiff as follows, inter alia:

    A. Defendant, by and through its employees and agents, harassed and discriminated against Plaintiff, and created a hostile work environment for Plaintiff by the persistent use of sex and or gender based derogatory language including, but not limited to, stating to Plaintiff that: this is a man's world and a man's job; if she can't do the dame job then go home; why sign the papers for a man's job if you can't do it.

    B. Defendant, by and through its employees and agents, harassed and discriminated against Plaintiff, and created a hostile work environment for Plaintiff by the persistently discouraging socialization between Plaintiff and her co-workers.

    C. Defendant, by and through its employees and agents, harassed and discriminated against Plaintiff, and created a hostile work environment for

        Plaintiff by the intentionally making the Plaintiff's job more difficult by forcing the plaintiff to lift weight in excess of the limits of the job description without any assistance, and instructing Plaintiff's co-workers not a assist her with lifting steel rails.

    D.    Defendant, by and through its employees and agents, harassed and discriminated against Plaintiff, and created a hostile work environment for Plaintiff by sabotaging plaintiff work performance.

    E.    Defendant, by and through its employees and agents, harassed and discriminated against Plaintiff, and created a hostile work environment for Plaintiff by terminating Plaintiff employment a mechanical malfunction beyond her control.

41. Defendant discriminated against Plaintiff in connection with the terms and conditions and privileges of her employment with Defendant.

42. Defendants conduct was in violation of 42 U.S.C. 2000e-2.

43. As a result of Defendant's was unlawful employment practices the Plaintiff was injured and damaged in one or more of the following particulars:

    A.    Lost back wages, including 401K/retirement and insurance benefits and other related employment benefits;

    B.    Front wages, including 401K/retirement and insurance benefits and other related employment benefits;

    C.    Mental anguish; and

    D.    Loss of enjoyment of life;

44. The Defendant's discrimination and harassment conduct against the Plaintiff was done with intent and malice, or with reckless disregard for the rights of the Plaintiff under Title VII Civil Rights Act of 1964, as amended.

### FOR A SECOND CAUSE OF ACTION
(Retaliation, Title VII of the Civil Right of 1964, as amended)

45. Plaintiff reiterates each and every allegation alleged herein as if the same were restated herein verbatim.

46. When Plaintiff complaint of the discriminating and harassing conduct of Larson and McAlhany, the level of harassment and discrimination conduct increased.

47. As a result of Defendant's was unlawful employment practices the Plaintiff was injured and damaged in one or more of the following particulars:

    B.  Lost back wages, including 401K/retirement and insurance benefits and other related employment benefits;

    C.  Front wages, including 401K/retirement and insurance benefits and other related employment benefits;

    C.  Mental anguish; and

    D.  Loss of enjoyment of life;

48. The Defendant's discrimination and harassment conduct against the Plaintiff was done with intent and malice, or with reckless disregard for the rights of the Plaintiff under Title VII Civil Rights Act of 1964, as amended.

    WHEREFORE, the Plaintiff prays for the following relief:

    A.  For sexual discrimination and harassment pursuant to the Civil Rights Act of 1964, as amended, Plaintiff seeks past and future back pay, loss wages and or income, mental anguish damages, emotional stress and pain damages, loss of enjoyment of life damages, embarrassment damages, humiliation damages, and attorneys' fees damages, and costs and expenses of this litigation against Defendant; and

    B.  Retaliation pursuant to the Civil Rights Act of 1964, as amended, Plaintiff seeks past and future back pay, loss wages and or income, mental anguish damages, emotional stress and pain damages, loss of enjoyment of life damages, embarrassment damages, humiliation damages, and attorneys' fees damages, and costs and expenses of this litigation against Defendant.

    Respectfully submitted,

| | |
|---|---|
| Florence, SC | /S/ Thurmond Brooker_____ |
| | Thurmond Brooker, Esq. |
| | SCDC ID # 7352 |
| December 3, 2017 | P. O. Box 1405 |
| | Florence, SC 29503-1450 |
| | (843) 679-0056 |
| | ATTORNEY FOR PLAINTIFF |